DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that found appellant guilty of one count of attempted rape, one count of aggravated burglary and two counts of attempted murder; imposed sentence and determined appellant to be a sexual predator. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
"First Assignment of Error:
 "THE TRIAL COURT ERRED WHEN, OVER OBJECTION, IT PERMITTED THE STATE TO IMPEACH WITNESS LADAWNA MANNING WITH A STATEMENT SHE HAD MADE TO LIEUTENANT HUNT. (TR 399-401.)
"Second Assignment of Error:
 "THE TRIAL COURT ERRED WHEN, OVER OBJECTION, IT PERMITTED LIEUTENANT HUNT TO TESTIFY THAT LADAWNA MANNING HAD TOLD HIM THINGS SHE TESTIFIED AT TRIAL WERE LIES. (TR 452-453.)
"Third Assignment of Error:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT IMPOSED SENTENCE WITHOUT FIRST AFFORDING APPELLANT HIS RIGHT OF ALLOCUTION AND BASED THE SENTENCE ON AN IMPROPER CONSIDERATION.
"Fourth Assignment of Error:
 "THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE FINDING THAT APPELLANT IS A SEXUAL PREDATOR, AND THE FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
"Fifth Assignment of Error:
 "A CRIMINAL DEFENDANT RECEIVES CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY REMAINS MUTE AT A HEARING TO DETERMINE HIS SEXUAL OFFENDER CLASSIFICATION AND AT SENTENCING."
The facts that are relevant to the issues raised on appeal are as follows. During the early morning hours of May 28, 1998, fifteen-year-old Shemeria Claxton and twelve-year-old Kristina Wadsworth were sleeping in their home in Toledo when a man entered the home and attacked both girls. The intruder attempted to force Shemeria to have intercourse with him, stabbed her repeatedly, and then went to another bedroom and stabbed Kristina. Shemeria was able to call the police and the girls were taken to the hospital, where Shemeria remained for three weeks.
On June 5, 1998, appellant was charged with one count of attempted rape in violation of R.C. 2907.02(A)(2) and 2923.02, one count of aggravated burglary in violation of R.C. 2911.11(A) (1), and two counts of attempted murder in violation of R.C. 2903.02
and 2923.02. Trial was held on October 27, 28 and 29, 1998, after which the jury returned verdicts of guilty as to all counts. On October 30, 1998, the case proceeded to sentencing and a sexual offender classification hearing pursuant to R.C. 2950. The trial court imposed four consecutive sentences for a total of thirty-four years incarceration and found appellant to be a sexual predator. It is from that judgment that appellant appeals.
In his first assignment of error, appellant asserts that the trial court erred by permitting the state to impeach witness Ladawna Manning pursuant to Evid.R. 607 with a prior inconsistent statement she had made to an investigating officer. Appellant argues that the state did not show that Manning's testimony resulted in surprise and affirmative damage to the state's case.
Evid.R. 607(A) provides in relevant part:
 "* * * the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."
"`Affirmative damage' can be established only if the witness testified to facts which contradict, deny or harm the calling party's trial position." Dayton v. Combs (1993),94 Ohio App.3d 291, 299. This issue arose in the trial court when the state called as one of its witnesses Ladawna Manning, the victims' next door neighbor. Manning testified upon questioning by the state that at approximately 3:00 a.m. on May 28, 1998, she saw a man enter the victims' house. Manning then stated that she did not recall having told Lieutenant Hunt on May 29, 1998 that appellant was the person she saw. The state moved the court pursuant to Evid.R. 611(C) to ask leading questions because Manning's testimony as to the identity of the man who went into the house differed from what she had told Hunt. The trial court determined that Manning had changed her testimony and permitted the state to ask leading questions "in order to get to the truth of the matter."
Appellant concedes that the state was surprised by Manning's change in testimony. The issue, then, is whether Manning's testimony caused affirmative damage — that is, contradicted, denied or harmed the state's trial position. As soon as Manning stated, in response to the prosecutor's question, that she had not told Lieutenant Hunt that appellant was the man she saw enter the victims' house, the state requested permission to lead the witness. The trial court instructed the prosecutor to ask Manning the question again in an effort to "nail it down" before the court decided whether to grant the prosecutor's request. Manning then said the detective never asked her if she knew who went into the house, just whether she saw anyone go inside. Manning stated that she could not recall whether or not she told Lieutenant Hunt that she could identify the person. At that time, the prosecutor said that her claim of lack of memory made her a hostile witness. Defense counsel responded that there was no affirmative damage and that Manning was "simply not helping the case along." The trial court ruled that a basis existed for allowing the state to lead the witness.
Appellant cites to the decision in State v. Keenan
(1993), 66 Ohio St.3d 402, wherein the Supreme Court of Ohio held that a witness did not cause affirmative damage by stating that he could not tell whether the victim was crying, and that such a "neutral answer" did not provide the basis for impeachment. Appellant argues that Manning's response in this case also was a "neutral answer" that did not warrant impeachment. We note that the court in Keenan found that the question as to whether the victim was crying was "marginally relevant" to the kidnaping charge. In this case, however, the line of questioning went to the identity of the man who entered the house the night the two young girls were brutally assaulted and clearly was highly relevant to the charges against appellant. Based on the foregoing, we find that Manning's trial testimony contradicted and harmed the state's case and thereby caused affirmative damage. Accordingly, we find that the trial court did not err by allowing the state to lead the witness and appellant's first assignment of error is not well-taken.
In his second assignment of error, appellant asserts that the trial court erred by permitting Lieutenant Hunt to testify as to what Manning told him when he interviewed her the day following the assaults. Appellant argues that Hunt's testimony was hearsay and that the state wanted to use the statement not to impeach Manning but to bolster its identification of appellant as the attacker.
The record reveals that during Manning's direct examination, the state read to her the statement she gave Lieutenant Hunt wherein she said the man she saw enter and leave the victims' house the night they were attacked was appellant. Manning confirmed that was what she told Hunt. She recalled on direct that the following day she picked appellant's photograph out of a photo array shown to her by Hunt. Manning then stated that she had lied to Hunt. The state called Lieutenant Hunt, who testified that he returned to Manning's house the day after the attacks to show her a photo array. Hunt was beginning to explain what happened when he set the photos out for Manning to see when the defense objected to the line of questioning on the basis of hearsay.
After hearing arguments from both sides, the trial court permitted Hunt's testimony solely for the purpose of impeaching Manning. The court instructed the jury that Hunt's testimony regarding Manning's photographic identification of appellant was to be considered as impeachment of her previous testimony and not as substantive evidence of identification. Hunt then testified that Manning's testimony in court was not entirely the same as what she told him the day he showed her the photos. Hunt testified that when he showed Manning the photos she immediately pointed to appellant and said she knew him and then said "That's him." Hunt further testified that Manning told him appellant was the one who had gone into the house and that she had known that from the beginning.
Appellant asserts that because the content of Manning's prior statement to Hunt had already been introduced into evidence, the impeachment value of reintroducing it through Hunt's testimony was non-existent and that the state wanted to introduce the statement not to impeach Manning but to bolster the identification of appellant as the attacker.
Generally, a trial court has broad discretion concerning the admission or exclusion of evidence and a reviewing court will not reverse on such matters absent an abuse of that discretion and a showing that the complaining party suffered material prejudice.Columbus v. Taylor (1988), 39 Ohio St.3d 162. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
Upon thorough review of the record of proceedings in this case, we find that the trial court's decision to allow the state to further impeach Manning by way of Lieutenant Hunt's testimony as to Manning's statements was not unreasonable, arbitrary or unconscionable. The trial court gave a limiting instruction cautioning the jury not to consider Hunt's testimony as substantive evidence of identification. Further, appellant has not shown material prejudice. Evidence of Manning's prior statement to Hunt had already been heard by the jury by way of Manning's direct testimony, which we found was admissible, and further, the jury heard the clear, unequivocal testimony of victim Shemeria Claxton that appellant was the assailant. Based on the foregoing, we find that the trial court did not abuse its discretion by allowing Lieutenant Hunt to testify as to Manning's statements and, accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant asserts that he was denied his right of allocution pursuant to Crim.R. 32(A)(1) and that the trial court imposed the sentence it did with the intention of denying appellant the opportunity to appeal the sentence.
Crim.R. 32(A)(1) provides in relevant part:
 "(A)* * * At the time of imposing sentence, the court shall * * *
 "(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."
Appellant claims that he did not have an opportunity to speak in regard to his sentence. We have carefully examined the record and find that appellant's claim is simply not true. The transcript of the sentencing hearing indicates that after the trial court found appellant to be a sexual predator and before sentence was imposed the following discussion took place:
 "THE COURT: Mr. Williams, I want you to remain seated. But you have the opportunity to tell me anything you wish before I pronounce sentence, if you want to.
 "THE DEFENDANT: I don't feel this was a fair trial. You tell me I couldn't fire my lawyer because you feel this was the best lawyer of all lawyers. My lawyer done lied to me the whole time, and then all of a sudden this man right here don't know nothing about the other detective coming — coming over here to get me and fingerprint me on June 2nd, and then June 3rd they popped up with these — this — these little punk old cases on me, man. That ain't cool.
 "Dude right here, I know him. I've been trying to tell my lawyer the whole time I know him and where I know him from, when all of a sudden some — all of a sudden when the people or whoever supposed to beat him up or whatever. You know what I'm saying? He already had a grudge against me, dude who up on the jury thing right now. But he wasn't trying to listen to me. He just keep ignoring me. That's all I got to say. And I ain't the one that attacked the home girl."
It is clear from the record that appellant was provided the opportunity to speak in mitigation pursuant to Crim.R. 32(A)(1) and that appellant, to the best of his ability, took advantage of that opportunity.
As to appellant's claim that the trial court imposed sentence with the intention of denying him the opportunity to appeal, this argument is clearly without merit. The trial court stated at sentencing that if appellant received the maximum sentence he could appeal on that issue. The trial court then stated, "I have no wont to give you another avenue for appeal." After finding that the minimum sentence would demean the seriousness of the offenses, the trial court imposed sentences of seven years for the attempted rape, nine years for the aggravated burglary and nine years each for the two attempted murders, with all sentences to be served consecutively. Appellant appears convinced that the trial court's decision to sentence him to less than the maximum on each conviction was calculated to prevent an appeal. Appellant, however, was not prevented from appealing his convictions or sentences and the record reveals that the trial court informed appellant at sentencing of his right to appeal and to have an attorney appointed for him if he so chose. This argument is without merit. Based on the foregoing, this court finds appellant's third assignment of error not well-taken.
In his fourth assignment of error, appellant asserts that the trial court erred by finding him to be a sexual predator. Pursuant to R.C. 2950.09(B)(2), in determining whether an offender is a sexual predator, the trial court must consider all relevant factors, including, but not limited to, the following:
"(a)The offender's age;
 "(b)The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 "(c)The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 "(d)Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 "(e)Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 "(f)If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 "(g)Any mental illness or mental disability of the offender;
 "(h)The nature of the offender's sexual misconduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 "(I)Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 "(j)Any additional behavioral characteristics that contribute to the offender's conduct."
In order for a trial court to adjudicate an offender as a sexual predator, the court must consider the factors outlined above and the testimony and evidence presented, and determine whether there is clear and convincing evidence that the offender is a sexual predator. R.C. 2950.09(C)(2). Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954), 161 Ohio St. 469. In reviewing the trial court's decision, we must examine the record to determine whether sufficient evidence exists to meet the clear and convincing standard. Id. at 477.
The record in the case before us clearly supports the trial court's finding that appellant is a sexual predator. During the sexual offender portion of the hearing, the state asked that all of the evidence presented during the trial and the jury verdicts be incorporated into the record of the classification hearing. The trial court granted the state's request and the state tendered a copy of its proposed findings of fact and conclusions of law for that proceeding. The trial court then stated that it had considered the state's proposed findings of fact and conclusions of law, found them accurate in all respects, and incorporated them into the record. The trial court then found, based upon the evidence before the court, that appellant should be designated a sexual predator.
The record in this case includes findings that: appellant "made a coercive demand for sex" during the commission of an aggravated burglary; upon the victim's refusal, appellant repeatedly stabbed her, resulting in severe and extensive physical injuries; appellant was convicted of offenses including attempted rape and attempted murder against the same victim; appellant displayed extreme cruelty during the commission of the attempted rape and attempted murder, and appellant is likely to engage in the future in one or more sexually violent offenses. The trial court further found that the offenses of which appellant was convicted constituted sexually oriented offenses, sexually violent offenses, and offenses committed with a purpose to gratify the offender's sexual needs or desires, as contemplated by R.C.2950.01(D). Based on the foregoing, this court finds that the trial court's designation of appellant as a sexual predator was supported by clear and convincing evidence. Accordingly, appellant's fourth assignment of error is not well-taken.
In his fifth assignment of error, appellant asserts that he was denied effective assistance of counsel because his attorney, rather than advocate for his client, remained mute during sentencing and during the hearing to determine his sexual offender status.
To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. Strickland v. Washington (1984),466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v.Hamblin (1988), 37 Ohio St.3d 153.
This court has thoroughly examined the record of proceedings in the trial court. We find that there were two points at which the trial court asked if the defense wished to be heard. First, during the sexual offender classification portion of the hearing, after the state reviewed the evidence supporting its position that appellant should be designated a sexual predator, counsel stated that the defense had nothing with which to supplement the record. Then, during the sentencing portion of the hearing, the trial court asked if the defense had anything to present in mitigation. Defense counsel responded:
 "Your Honor, I would simply ask the Court to consider the reports generated by Court Diagnostic Treatment Center and Dr. Wayne Graves in regards to Mr. Williams's competency.
 "In both those reports the examiners found that Mr. Williams is functioning in the mildly mentally retarded range. I would ask the Court to take that into consideration in imposing sentence today."
It is clear from the foregoing that defense counsel did not stand mute and fail to speak on appellant's behalf. This court finds that appellant has not shown that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result and, accordingly, appellant's fifth assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
James R. Sherck, J. , Richard W. Knepper, P.J.Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ KNEPPER, P.J.